Exhibit A

Mark S. Hanna, Esq. (Attorney ID: 021792003)
**KINNEY LISOVICZ REILLY & WOLFF PC**
299 Cherry Hill Road, Suite 300
P.O. Box 912
Parsippany, NJ 07054
(973) 957-2550
Attorneys for Plaintiff, Insurance Auto Auctions, Inc.

| | |
|---|---|
| INSURANCE AUTO AUCTIONS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CARTERET FIRE DEPARTMENT, HOPELAWN FIRE DEPARTMENT, ISELIN FIRE DEPARTMENT #11, ISELIN FIRE DEPARTMENT #9, PERTH AMBOY FIRE DEPARTMENT, PORT READING FIRE DEPARTMENT, SOUTH AMBOY FIRE DEPARTMENT, SAYREVILLE FIRE DEPARTMENT, FORDS FIRE DEPARTMENT, METUCHEN FIRE DEPARTMENT, MIDDLESEX COUNTY FIRE MARSHAL, STATE OF NEW JERSEY, NATIONAL FOAM INC., JOHN DOES 1-99 ABC CORPORATIONS 1-99, and ABC PUBLIC ENTITIES<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-001809-21<br><br>*Civil Action*<br><br>**COMPLAINT** |

Plaintiff, Insurance Auto Auctions, Inc. ("Insurance Auto Auctions"), as and for its Complaint, alleges and says:

### THE PARTIES

1.      Plaintiff, Insurance Auto Auctions, Inc. is a corporation incorporated under the Laws of the State of Illinois with its principal place of business in the County of Cook, State of Illinois.

2.      Defendant Carteret Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

3.     Defendant Hopelawn Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

4.     Defendant Iselin Fire Department # 9 is a body corporate and politic of the County of Middlesex, State of New Jersey.

5.     Defendant Iselin Fire Department # 11 is a body corporate and politic of the County of Middlesex, State of New Jersey.

6.     Defendant Perth Amboy Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

7.     Defendant Port Reading Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

8.     Defendant South Amboy Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

9.     Defendant Sayreville Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

10.     Defendant Fords Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

11.     Defendant Metuchen Fire Department is a body corporate and politic of the County of Middlesex, State of New Jersey.

12.     Defendant Middlesex County Fire Marshall is a body corporate and politic of the County of Middlesex, State of New Jersey.

13.     Defendant State of New Jersey is a Body Corporate and Politic.

2

460946_1

14.     Defendant National Foam, Inc. is a corporation incorporated under the Laws of the State of Delaware with its principal place of business in the County of Harnett, State of North Carolina.

15.     Defendant John Does 1-99, ABC Corporations 1-99 and ABC Public Entities 1-99 are persons and/or entities unknown to Plaintiff at this time who were responsible for the pollution that occurred on a site leased and operated by Plaintiff.

## FACTS COMMON TO EACH COUNT

### Defendants' Use of Universal Gold AFFF

16.     Plaintiff repeats each of the above allegations as if set forth at length.

17.     This litigation arises out of a fire on premises located at 700 Federal Boulevard, Borough of Carteret, County of Middlesex, State of New Jersey (hereinafter referred to the as the "Federal Boulevard Site") on or about March 26, 2020.

18.      At all relevant times, Plaintiff leased the Federal Boulevard Site.

19.     On or about March 26, 2020, Defendants Carteret Fire Department, Iselin Fire Department # 9, Iselin Fire Department # 11, Perth Amboy Fire Department, Port Reading Fire Department, South Amboy Fire Department, Sayreville Fire Department, Fords Fire Department, Metuchen Fire Department and Middlesex County Fire Marshall (hereinafter collectively the "Fire Department Defendants") responded to the fire at the Federal Boulevard Site.

20.     Some or all of the Fire Department Defendants applied aqueous film forming foam (hereinafter AFFF) to the ground at the Federal Boulevard Site on or about March 26, 2020.

21.     The AFFF utilized by some and/or all of the of the Fire Department Defendants at the Federal Boulevard Site on or about March 26, 2020 was Universal Gold AFFF.

460946_1

22.     The AFFF utilized at the Federal Boulevard Site on March 26, 2020, by some and/or all of the Fire Department Defendants was manufactured, designed, marketed, sold, and/or distributed by Defendant National Foam, Inc (hereinafter "National Foam").

23.     Some and/or all of the Fire Department Defendants applied Universal Gold AFFF, a product containing perfluorooctane sulfonic acid (hereinafter "PFOS") and/or perfluorooctanoic acid (hereinafter "PFOA") and/or their precursors at the Federal Boulevard Site on or about March 26, 2020.

24.     All of the Fire Department Defendants knew and/or should have known that Universal Gold AFFF was hazardous to the environment and caused environmental contamination.

25.     Prior to the fire, Defendant State of New Jersey authorized, supplied and/or instructed the Fire Department Defendants to use Universal Gold AFFF.

26.     AFFF is a product used to fight fuel and other flammable liquid fires.  When the AFFF concentrate is mixed with water, a foam solution is formed.  The foam is sprayed onto fire intending to produce an aqueous film blocking the fire's supply of oxygen, generating a cooling effect, and creating an evaporation barrier to prevent re-ignition.

27.     As a result of the Defendants' use, manufacture, sale, marketing, design and/or distribution of Universal Gold AFFF, Plaintiff has and/or will incur damages including but not limited to the cost of environmental response and remediation of the Federal Boulevard Site.

### Prior Litigation Filed by Defendant State of New Jersey

28.     Prior to the fire, on or about May 14, 2019, Defendant State of New Jersey commenced litigation in the Superior Court of New Jersey, Mercer County under Docket No. MER-L-953-19, captioned Grewal et al v. The 3M Company (hereinafter New Jersey Complaint)

4

regarding the manufacture, design, marketing, sale, and/or distribution of AFFF containing and/or which break down into PFOS and PFOS.

29.     The New Jersey Complaint alleged that Defendant National Foam manufactured, designed, marketed, sold, and/or distributed AFFF containing PFOS and/or PFOA and/or their precursors that caused environmental contamination and damage to land throughout the State of New Jersey.

30.     Defendant State of New Jersey knew or should have known that the use of Universal Gold AFFF could cause environmental harm on May 14, 2019 at the latest.

31.     Despite knowing about its properties to cause environmental contamination, Defendant State of New Jersey did not cease its distribution of Universal Gold AFFF, or instruct political subdivisions to cease using Universal Gold AFFF upon learning of its hazardous and/or ultrahazardous properties.

32.     Upon information and belief, the Fire Department Defendants knew or should have known that Universal Gold AFFF could cause environmental contamination where the fire occurred.

### Environmental Dangers Posed by AFFF

33.     According to the New Jersey Complaint, PFOS and PFOA present a significant threat to New Jersey's environment and residents. They are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain. PFOS and PFOA are also associated with a long list of adverse health effects in humans. PFOS is associated with immune system suppression, including decreases in antibody responses to vaccines and increases in risk of childhood infections. PFOA is associated with high cholesterol, increased liver enzymes, pregnancy-induced hypertension, and testicular and kidney cancer.

460946_1

34.     Defendant National Foam was fully aware, for decades, of the toxic nature of PFOS and PFOA and the harmful and negative impact these substances have on the environment, wildlife, and human health.  Nevertheless, National Foam continued to manufacture, market, and sell their AFFF products in New Jersey and elsewhere, and concealed the threat associated with use of their products.

35.     AFFF contains and/or breaks down into PFOS and/or PFOA, which are highly fluorinated synthetic chemical compounds that include carbon chains containing at least one carbon atom on which all hydrogen atoms are replaced by fluorine atoms. The PFAS family includes PFOS and PFOA.

36.     When used as intended during a firefighting event or training exercise, AFFF can cause hundreds, if not thousands, of gallons of foamy water laced with PFOS and/or PFOA to enter the environment in a variety of ways, including, but not limited to, through soil.

37.     Defendant National Foam advertised, offered for sale, and sold AFFF to New Jersey government entities, counties, municipalities, local fire departments, and/or other governmental entities and quasi-governmental entities for use in New Jersey.

38.     Once introduced into the environment, PFOS and PFOA can quickly spread.

39.     PFOS and PFOA persist in the environment indefinitely because their multiple fluorinecarbon bonds, which are exceptionally strong and stable, are resistant to metabolic and environmental degradation processes.

40.     As PFOS and PFOA are very slowly excreted from individual organisms, ongoing low level exposure results in a build-up in body burden (i.e., levels of PFOS and PFOA remaining within the body). They also biomagnify, meaning their concentration in organic tissue increases as they are consumed up the food chain.

460946_1

41.     PFOS cause adverse impacts to the environment and animal and human health.

42.     PFOS and PFOA are associated with a variety of adverse health effects in humans.

43.     PFOS exposure is associated with increases in serum lipids (i.e., high cholesterol), decreases in antibody response to vaccines, increases in risk of childhood infections, and adverse reproductive and developmental effects, including pregnancy-induced hypertension and preeclampsia.

44.     PFOA exposure is associated with increases in serum lipids and certain liver enzymes (indicating liver damage), decreases in antibody response to vaccines, pregnancy-induced hypertension and preeclampsia, decreased birthweight, and testicular and kidney cancer.

45.     Fetuses and newborns are particularly sensitive to PFOS's and PFOA's toxicity. Further, exposures to newborns are higher (compared to other subpopulations) through breastmilk or prepared formula when drinking water is contaminated with PFOS and/or PFOA.

### Defendant National Foam's Knowledge of the

### Environmental Dangers Posed by Universal Gold AFFF

46.     According to the New Jersey Complaint and upon information and belief, National Foam began to manufacture, market, and sell AFFF in the 1970s.

47.     Non-Party The 3M Company (hereinafter 3M) ceased the manufacture, sale, marketing and/or distribution of AFFF in 2000 due to concerns of environmental contamination posed by AFFF.

48.     Defendant National Foam continued manufacturing AFFF after 3M ceased the sale, marketing and/or distribution of AFFF in 2000 due to concerns of environmental contamination posed by AFFF.

460946_1

49.     Defendant National Foam knew and/or should have known of the environmental risks associated with AFFF, PFOA and/or PFOS in 2000 based on the cessation of manufacturing by 3M.

50.     Defendant National Foam is a member of the Firefighting Foam Coalition (hereinafter FFFC), a trade group of AFFF manufacturers formed in 2001 to advocate for AFFF's continued use.

51.     Defendant National Foam shared and/or acquired knowledge and information regarding AFFF and/or PFOA and their environmental risks through FFFC.

52.     FFFC Members including Defendant National Foam worked together to protect AFFF from scrutiny. Their close cooperation, including messaging on PFOA's toxicological profile, indicates non-party du Pont (also a member of the FFFC) shared knowledge and information of PFOA's dangers with other members, including Defendant National Foam. All of this was done as a part of the FFFC's efforts to shield its members and the AFFF industry from the detrimental impact of the public and regulators learning the truth about the harms of PFOA to the environment and human health.

53.     FFFC Members including Defendant National Foam regularly published newsletters bolstering their AFFF products. Defendant National Foam's Representatives also regularly attended conferences. These coordinated efforts were meant to dispel concerns about the impact AFFF had on the environment and human health. Defendant National Foam worked in concert with others to conceal known risks of their AFFF products and the PFOA and its precursors contained therein from the government and public. Upon information and belief, they either had an express or tacit understanding to conceal such risks.

8

54.     FFFC Members including Defendant National Foam repeated the same message for years: Only one AFFF chemical, PFOS, had been taken off the market. Since the Defendant National Foam's products allegedly did not contain PFOS, National Foam claimed its products were safe.

55.     FFFC Members including Defendant National Foam knew, however, that their messaging regarding their AFFF products was false. Defendant National Foam knew that PFOA was released from the use of their AFFF products, and that PFOA presented a similar threat to the environment and public health as that posed by PFOS.

56.     In 2018, Defendant National Foam released an alternative type of AFFF marketed under the name "Universal Green."

57.     Defendant National Foam describes Universal Green as "the gold standard for fighting and suppressing high risk, flammable liquid fires."

58.     Defendant National Foam also states "Today, environmental, health and safety concerns have given rise to a need for a Fluorine Free Foam, particularly for use where the foam cannot be contained to prevent ground or water infiltration."

59.     Defendant National Foam further described Universal Green as "High performance with minimal environmental impact Universal Green is a unique, patented foam with no added fluorine, fluorosurfactants, fluoropolymers, organohalogen, PFOS, PFOA and PFOS. When environmental impact is a primary concern, Universal Green is ideal. It is biodegradable and is especially suited for emergency incidents where the containment of fire water runoff cannot be guaranteed."

60.     On or about February 28, 2020, Defendant National Foam released a press release regarding its new Universal Green Product.  The press release noted global concerns "around the

9

use of per- and polyfluoroalkyl substances (PFOS) - known as the 'forever chemicals' because they can persist for thousands of years in the environment."

61.     Defendant National Foam did not recall Universal Gold despite its acknowledgement that PFOS pollution "can persist for thousands of years in the environment."

## COUNT ONE

(Strict Products Liability – Design Defect against National Foam)

62.     Plaintiff repeats each of the above allegations as if set forth at length.

63.     Defendant National Foam designed, manufactured, marketed, and sold Universal Gold AFFF products containing PFOS, PFOA, and/or their precursors that were used, handled, released, and/or spilled, at the Federal Boulevard Site on or about March 26, 2020.

64.     As a designer, manufacturer, marketer, and seller of AFFF, Defendant National Foam had a duty to make and sell products that are reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses. Defendant National Foam owed that duty both to reasonably foreseeable users of their products and also to any person or property that might reasonably be expected to come into contact with those products.

65. Defendant National Foam's AFFF products containing PFOS, PFOA, and/or their precursors were used in a reasonably foreseeable manner and without substantial change in the condition of such products. These products were defective and unfit for their reasonable use. Defendant National Foam's AFFF products foreseeably contaminated sediments, soils, biota, and other natural resources at and around the sites where they were used. Defendant National Foam knew or reasonably should have known that their manufacture, marketing, and/or sale, as well as their customers' transport, storage, use, handling, release, spilling and/or disposal of AFFF in an

460946_1

intended or reasonably foreseeable manner, would result in the release of PFOS and PFOA in the environment, including at the Federal Boulevard Site.

66.     Universal Gold manufactured by Defendant National Foam containing PFOS, PFOA, and/or their precursors used at the Federal Boulevard Site have injured and are continuing to injure sediments, soils, biota, and other natural resources at and/or around these sites. Defendant National Foam's Universal Gold AFFF was defective in design and unreasonably dangerous because, among other things:

1) Defendant National Foam's Universal Gold AFFF causes extensive and persistent PFOS and PFOA contamination when used in a reasonably foreseeable and intended manner;

2) Defendant National Foam failed to perform reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential ecological and human health effects of PFOS and PFOA in Universal Gold AFFF.

67.     At all times relevant to this action, the foreseeable risk to the environment and public health and welfare posed by Defendant National Foam's Universal Gold AFFF containing PFOS, PFOA, and/or their precursors outweighed the cost to Defendant National Foam of reducing or eliminating such risk.

68.     At all times relevant to this action, Defendant National Foam knew or should have known about reasonably safer and feasible alternatives to Universal Gold AFFF, and the omission of such alternative designs rendered their AFFF products not reasonably safe.

69.     As a direct and proximate result of the defects in Defendant National Foam's design, manufacture, marketing, and sale of AFFF products containing PFOS, PFOA, and/or their precursors, sediments, soils, biota and other natural resources at and/or near the Federal Boulevard Site have become contaminated with PFOS and/or PFOA.

11

70.     As a direct and proximate result of Defendant National Foam's acts and omissions, as alleged herein, Plaintiff has incurred, are incurring, and will continue to incur damages in an amount to be proved at trial related to PFOS and PFOA contamination of, sediment, soils, biota, and other natural resources at and/or near the Federal Boulevard Site.

71.     As a further direct and proximate result of Defendant National Foam's acts and omissions alleged in this Complaint, Plaintiff has incurred, and will continue to incur, investigation, cleanup and removal, restoration, treatment, monitoring, and other costs and expenses related to contamination of the sediments, soils, biota, and other natural resources at and/or near the Federal Boulevard Site.

72.     Defendant National Foam knew it was substantially certain that their acts and omissions described above would cause the contamination and harms described herein.

73.     Defendant National Foam committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

74.     Defendant National Foam is strictly liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant National Foam as follows:

a.  Finding Defendant National Foam liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

460946_1

b. Ordering Defendant National Foam to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site  attributable to Defendant National Foam's AFFF;

c. Ordering Defendant National Foam to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendant National Foam's Universal Gold AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT TWO

(Strict Products Liability – Failure to Warn against National Foam)

75.     Plaintiff repeats each of the above allegations as if set forth at length.

76.     As a designer, manufacturer, marketer, and seller of AFFF products containing PFOS, PFOA, and/or their precursors, Defendant National Foam had a strict duty to warn fire departments, the State of New Jersey and/or any other entity whose premises may be harmed by the use of its Universal Gold AFFF.

77.   Defendant National Foam either did not warn and/or inadequately warned of the likelihood that PFOS and/or PFOA would be released into the environment during the normal use of Defendant National Foam's Universal Gold AFFF, and of the widespread, toxic, and persistent effects of such releases. Defendant National Foam failed to provide such warnings to users and

buyers of Universal Gold products containing PFOS, PFOA, and/or their precursors, and others to which it was reasonably foreseeable Defendant National Foam's AFFF products would cause harm. To the extent Defendant National Foam provided any warnings about Universal Gold, they were not warnings that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger posed by AFFF containing PFOS, PFOA, and/or their precursors, and the warnings did not convey adequate information on the dangers of AFFF containing these chemicals to the mind of a reasonably foreseeable or ordinary user or bystander.

78.     Despite the fact that Defendant National Foam knew or should have known about the risks of Universal Gold AFFF containing PFOS, PFOA, and/or their precursors, Defendant National Foam withheld such knowledge from Plaintiff, regulators, fire departments and the public. Moreover, Defendant National Foam affirmatively distorted and/or suppressed their knowledge and the scientific evidence linking their products to the unreasonable dangers they pose.

79.     At no time relevant to this action did Defendant National Foam warn users and buyers of its Universal Gold AFFF product, that Defendant National Foam's Universal Gold AFFF product would release PFOS and/or PFOA into the environment during the products' normal use, and of the widespread, toxic, and persistent effects of such releases.

80.     Defendant National Foam's Universal Gold AFFF products were in the same condition when they were purchased and/or used as they were when they left Defendant National Foam's control. The Universal Gold AFFF product was used by the Fire Department Defendants in a reasonably foreseeable manner and without any substantial change in the condition of the products.

81.    Had Defendant National Foam provided adequate warnings about the hazards associated with its Universal Gold AFFF products containing PFOA, PFOS, and/or their precursors, users and buyers and others who it was reasonably foreseeable would be harmed by Universal Gold would have heeded those warnings.

82.    As a direct and proximate result of Defendant National Foam's failure to warn of the hazards of Universal Gold AFFF containing PFOS, PFOA, and/or their precursors, sediments, soils, biota, and other natural resources at the Federal Boulevard Site have become contaminated with PFOS and PFOA.

83.    As a direct and proximate result of Defendant National Foam's acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur in the future damages related to PFOS and PFOA contamination in an amount to be proved at trial.

84.    Defendant National Foam knew it was substantially certain that their acts and omissions described above would cause injuries and damage to the Plaintiff and/or others in a similar position to the Plaintiff.

85.    This suit is an "environmental tort action" as defined in the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 to -11.

86.    Defendant National Foam committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

87.    Defendant National Foam is strictly liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant National Foam as follows:

460946_1

a. Finding Defendant National Foam liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b. Ordering Defendant National Foam to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site  attributable to Defendant National Foam's AFFF;

c. Ordering Defendant National Foam to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendant National Foam's Universal Gold AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT THREE

(Negligent Common Law Products Liability Against Defendant National Foam)

88.     Plaintiff repeats each of the above allegations as if set forth at length.

89.     Defendant National Foam had a duty to the Plaintiff to ensure that PFOS and/or PFOA were not released as a result of the use, release, and/or spilling of its AFFF products, and did not injure sediment, soils, and biota at the Federal Boulevard Site.

16

90.     Defendant National Foam had a duty to Plaintiff to exercise due care in the design, manufacture, marketing, sale, testing, labeling, and instructions for use of their AFFF products containing PFOS, PFOA and/or their precursors.

91.     Defendant National Foam breached the aforementioned duties.

92.     Defendant National Foam knew and/or should have known prior to March 2020 that its Universal Gold AFFF posed a significant hazard to the environment and soils at locations where it was used.

93.     As a direct and proximate result of Defendant National Foam's negligence in designing AFFF and in failing to warn purchasers; sediments, soils, biota, and other natural resources at the Federal Boulevard Site have become contaminated with PFOS and PFOA.

94.     As a further direct and proximate result of the contamination of the Federal Boulevard site from Defendant National Foam's Universal Gold AFFF containing PFOA, PFOS, and/or their precursors, Plaintiff has incurred, is incurring, and will continue to incur investigation, clean up and removal, treatment, monitoring and restoration costs, and expenses for which Defendant National Foam is liable.

95.     National Foam committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant National Foam as follows:

a.  Finding Defendant National Foam liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future

testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b. Ordering Defendant National Foam to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to Defendant National Foam's Universal Gold AFFF;

c. Ordering Defendant National Foam to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendant National Foam's Universal Gold AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT FOUR

(New Jersey Spill Act, N.J.S.A. 58:10-23.11 *et seq.* Against All Fire Department Defendants)

96.     Plaintiff repeats each of the above allegations as if set forth at length.

97.     At all relevant times to the instant litigation, there was in full force and effect an act known as the New Jersey Spill Act, N.J.S.A. 58:10-23.11 *et seq.*

98.     Under N.J.S.A. 58:10-23.11 *et seq.*, all parties in any way responsible for the discharge of any hazardous substances are jointly and severally liable for the entire cost of cleanup.

99.     Under N.J.S.A. 58:10-23.11(b), discharge is defined a "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring,

emitting, emptying, or dumping of hazardous substances into he water or onto the lands of the State."

100.    The State Legislature waived the State's sovereign immunity for claims arising under the New Jersey Spill Act.

101.    Each of the Fire Department Defendants is liable under the New Jersey Spill Act, as they used, discharged and/or spilled Universal Gold AFFF at the Federal Boulevard Site on or about March 26, 2020.

102.    The use, spilling and/or discharge of Universal Gold AFFF by the Fire Department Defendants resulted in environmental pollution of the Federal Boulevard Site.

103.    By using, discharging and/or spilling Universal Gold AFFF at the Federal Boulevard Site on or about March 26, 2020, each of the Fire Department Defendants caused a discharge within the meaning of N.J.S.A. 58:10-23.11(b) at the Federal Boulevard Site.

104.    Under N.J.S.A. 58:10-23.11(g), each of the Fire Department Defendants is jointly and severally liable for the entire cost of cleaning and remediating the Federal Boulevard Site, as they are each partially responsible for the pollution of the Federal Boulevard Site with Universal Gold AFFF.

105.    The Fire Department Defendants committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against the Fire Department Defendants as follows:

a.   Finding each Fire Department Defendant jointly and severally liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS

and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b. Ordering each Fire Department Defendant to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to National Foam's AFFF;

c. Ordering each Fire Department Defendant to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

## **COUNT FIVE**

(New Jersey Spill Act N.J.S.A. 58:10-23.11 *et seq.* Against National Foam)

106.    Plaintiff repeats each of the above allegations as if set forth at length.

107.    At all relevant times to the instant litigation, there was in full force and effect an act known as the New Jersey Spill Act, N.J.S.A. 58:10-23.11 *et seq*.

108.    Under N.J.S.A. 58:10-23.11 *et seq*., all parties in any way responsible for the discharge of any hazardous substances are jointly and severally liable for the entire cost of cleanup.

109.    Under N.J.S.A. 58:10-23.11(b), discharge is defined a "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of hazardous substances into he water or onto the lands of the State."

110.    Defendant National Foam manufactured, developed, sold, marketed and/or distributed Universal Gold AFFF, which contains and/or breaks down into PFOS and/or PFOA.

111.    Defendant National Foam promoted Universal Gold as a firefighting foam, intended to be used to extinguish fires.

112.    As a foreseeable result of the use of Universal Gold AFFF manufactured, developed, sold, marketed and/or distributed by Defendant National Foam, a discharge within the meaning of N.J.S.A. 58:10-23.11(b) occurred at the Federal Boulevard Site.

113.    Under N.J.S.A. 58:10-23.11(g), Defendant National Foam is jointly and severally liable for the entire cost of cleaning and remediating the Federal Boulevard Site, as it is partially liable for the pollution of the Federal Boulevard Site with Universal Gold AFFF.

114.    Defendant National Foam committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant National Foam as follows:

a.  Finding Defendant National Foam liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future

testing of the Federal Boulevard Site until restored to non-detectable level and/or the New

Jersey Department of Environmental Protection releases a No Further Action Letter;

b.  Ordering Defendant National Foam to pay for all costs related to the investigation, cleanup,

restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal

Boulevard Site attributable to Defendant National Foam's AFFF;

c.  Ordering Defendant National Foam to pay for all damages in an amount at least equal to

the full cost of restoring the Federal Boulevard Site to its original condition prior to the

PFOS and/or PFOA contamination attributable to Defendant National Foam's Universal

Gold AFFF;

d.  Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e.  Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees,

incurred in prosecuting this action, together with prejudgment interest, to the full extent

permitted by law; and

f.  Awarding Plaintiff such other relief as this Court deems appropriate.

## <u>COUNT SIX</u>

(New Jersey Spill Act N.J.S.A. 58:10-23.11 et seq. Against State of New Jersey)

115.    Plaintiff repeats each of the above allegations as if set forth at length.

116.    At all relevant times to the instant litigation, there was in full force and effect an

act known as the New Jersey Spill Act, N.J.S.A. 58:10-23.11 *et seq.*

117.    Under N.J.S.A. 58:10-23.11 *et seq.*, all parties in any way responsible for the

discharge of any hazardous substances are jointly and severally liable for the entire cost of cleanup.

118.    Under N.J.S.A. 58:10-23.11(b), discharge is defined a "any intentional or

unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring,

emitting, emptying, or dumping of hazardous substances into he water or onto the lands of the State."

119.    The State Legislature waived the State's sovereign immunity for claims arising under the New Jersey Spill Act.

120.    On or before May 14, 2019, The State of New Jersey had actual knowledge of the dangers posed to AFFF products containing and/or which broke down into PFOS and/or PFOA.

121.    In spite of its actual knowledge of these damagers, the State of New Jersey continued to supply, recommend and/or instruct fire departments, including the Fire Department Defendants to continue using AFFF products containing and/or which broke down into PFOS and/or PFOA, including but not limited to Universal Gold.

122.    The State of New Jersey failed to disseminate to fire departments, including but not limited to the Fire Department Defendants information about the hazardous properties of AFFF products containing and/or which broke down to PFOS and/or PFOA.

123.    The State of New Jersey's actions and/or inactions with respect to AFFF resulted in a discharge of hazardous materials a discharge within the meaning of N.J.S.A. 58:10-23.11(b) occurred at the Federal Boulevard Site.

124.    Under N.J.S.A. 58:10-23.11(g), the State of New Jersey is jointly and severally liable for the entire cost of cleaning and remediating the Federal Boulevard Site, as it was partially responsible for the pollution of the Federal Boulevard Site with Universal Gold AFFF.

125.    The State of New Jersey committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against the State of New Jersey as follows:

a. Finding the State of New Jersey liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b. Ordering the State of New Jersey to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site  attributable to National Foam's AFFF;

c. Ordering the State of New Jersey to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

460946_1

## COUNT SEVEN

(Palpably Unreasonable Conduct against the Fire Department Defendants)

126.     Plaintiff repeats each of the above allegations as if set forth at length.

127.     Prior to March 26, 2020, it was widely known that AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold posed a hazard to the environment.

128.     Alternative and equally effective fire fighting products were available.

129.     The Fire Department Defendants had actual and/or constructive notice of the hazardous posted by AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold posed a hazard to the environment prior to March 26, 2020.

130.     The Fire Department Defendants acted in a palpably unreasonable manner by continuing to use AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold posed a hazard to the environment in spite of having actual and/or constructive notice that the use of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold posed a hazard to the environment.

131.     The Fire Department Defendants use of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold at the Federal Boulevard Site on or about March 26, 2020 was palpably unreasonable as it was plainly and obviously without reason or reasonable basis, capricious, arbitrary or outrageous.

460946_1

132.    As a result of the palpably unreasonable actions of the Fire Department Defendants, Plaintiff has and/or will continue to incur damages including but not limited to the cost of environmental response and remediation of the Federal Boulevard Site.

133.    The Fire Department Defendants committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant against the Fire Department Defendants as follows:

a.  Finding the Fire Department Defendants jointly and severally liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b.  Ordering the Fire Department Defendants to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to National Foam's AFFF;

c.  Ordering the Fire Department Defendants to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d.  Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

460946_1

e.  Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f.  Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT EIGHT

(Palpably Unreasonable Conduct Against the State of New Jersey)

134.    Plaintiff repeats each of the above allegations as if set forth at length.

135.    Prior to March 26, 2020, it was widely known that AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold posed a hazard to the environment.

136.    On or before May 14, 2019, Defendant the State of New Jersey had actual notice of the environmental effects of the AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold.

137.    In spite of its actual and/or constructive notice of these environmental effects, Defendant the State of New Jersey continued supplying, recommending and/or instructing fire departments including the Fire Department defendants to use AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold.

138.    In spite of having actual and/or constructive notice of the environmental effects of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, the State of New Jersey did not instruct fire departments including but not limited to the Fire Department Defendants to cease using AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold.

27

139.    In spite of having actual and/or constructive notice of the environmental effects of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, the State of New Jersey did not disseminate information regarding the environmental effects of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold to fire departments.

140.    Alternative and equally effective fire fighting products were available.

141.    The State of New Jersey acted in a palpably unreasonable manner by continuing to distribute, supply and/or instruct fire departments including but not limited to the Fire Department Defendants to use AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold.

142.    The State of New Jersey acted in a palpably unreasonable manner by failing to inform fire departments including but not limited to the Fire Department Defendants of the environmental hazards of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold.

143.    The State of New Jersey's actions with respect to AFFF were palpably unreasonable as the actions were plainly and obviously without reason or reasonable basis, capricious, arbitrary or outrageous.

144.    As a result of the palpably unreasonable actions of the State of New Jersey, Plaintiff has and/or will continue to incur damages including but not limited to the cost of environmental response and remediation of the Federal Boulevard Site.

145.    The State of New Jersey committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

460946_1

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants as follows:

a. Finding the State of New Jersey liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b. Ordering the State of New Jersey to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to National Foam's AFFF;

c. Ordering the State of New Jersey to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d. Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e. Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT NINE

(Private Nuisance Against All Defendants)

146.    Plaintiff repeats each of the above allegations as if set forth at length.

147.    Defendants' actions, through their manufacture, design, marketing, sale, distribution and/or use of AFFF products containing and/or which break down to PFOS and/or

PFOA including but not limited to Universal Gold, constituted an invasion in the Plaintiff's use and the Federal Boulevard Site.

148.   The Defendants' actions, through their manufacture, design, marketing, sale, distribution and/or use of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold were intentional and unreasonable.

149.   The Defendants' actions in creating a private nuisance have significantly interfered with Plaintiff's use of the Federal Boulevard Site.

150.   As a result of the private nuisance created by Defendants, Plaintiff has and/or will incur damages including but not limited to the cost of environmental response and remediation of the Federal Boulevard Site.

151.   The Defendants committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions, and such acts and/or omissions were palpably unreasonable.

WHEREFORE, Plaintiff requests that this Court enter judgment against the Defendants as follows:

a.   Finding the Defendants jointly and severally liable for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b.   Ordering the Defendants to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to National Foam's AFFF;

c.  Ordering the Defendants to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d.  Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

e.  Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f.  Awarding Plaintiff such other relief as this Court deems appropriate.

## COUNT TEN

(Trespass upon land against Fire Department Defendants)

152.    Plaintiff repeats each of the above allegations as if set forth at length.

153.    Each Fire Department Defendant entered the Federal Boulevard Site, which was leased by Plaintiff on or about March 26, 2020.

154.    Each Fire Department Defendant used and/or spilled AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, at the Federal Boulevard Site on or about March 26, 2020.

155.    Each Fire Department Defendant used AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, at the Federal Boulevard Site on or about March 26, 2020 without the authorization of Plaintiff.

156.    The Fire Department Defendants' use and/or spilling of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, at the Federal Boulevard Site on or about March 26, 2020 caused damage to the Federal Boulevard Site, and their actions in using and/or spilling AFFF were palpably unreasonable.

31

460946_1

157.    As a result of the use of AFFF products containing and/or which break down to PFOS and/or PFOA including but not limited to Universal Gold, at the Federal Boulevard Site on or about March 26, 2020, Plaintiff has incurred damages including but not limited to the cost of environmental response and remediation of the Federal Boulevard Site.

154.    The Fire Department Defendants committed each of the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against the Defendants as follows:

a.  Finding the Fire Department Defendants liable jointly and severally for all costs to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the Federal Boulevard Site including but not limited to the costs of past and future testing of the Federal Boulevard Site until restored to non-detectable level and/or the New Jersey Department of Environmental Protection releases a No Further Action Letter;

b.  Ordering the Fire Department Defendants to pay for all costs related to the investigation, cleanup, restoration, treatment, and monitoring of PFOS and/or PFOA contamination of Federal Boulevard Site attributable to National Foam's AFFF;

c.  Ordering the Fire Department Defendants to pay for all damages in an amount at least equal to the full cost of restoring the Federal Boulevard Site to its original condition prior to the PFOS and/or PFOA contamination attributable to Defendants' AFFF;

d.  Awarding Plaintiff punitive damages in an amount to be determined by the trier of fact;

460946_1

e.  Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f.  Awarding Plaintiff such other relief as this Court deems appropriate.

### DEMAND FOR TRIAL BY JURY

**PLEASE TAKE NOTICE** that Insurance Auto Auctions demands a trial by jury of all issues so triable.

### DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Mark S. Hanna, Esq. is hereby designated trial counsel for Insurance Auto Auctions.

### RULE 4:5-1 CERTIFICATION

PURSUANT TO R. 4:5-1, the undersigned hereby certifies that, on information and belief, this matter is not the subject of any other action pending in any court or arbitration proceeding. Further, I certify that I am not aware of any other party that should be joined in this action.

KINNEY LISOVICZ REILLY & WOLFF PC
Attorneys for Plaintiff,
Insurance Auto Auctions, Inc.

By:  /s/ Mark S. Hanna
MARK S. HANNA

Dated: March 24, 2022

33